UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JERRY PHILLIPS,
                                        Plaintiff,

    v.                                                                      6:06-CV-1294
                                                                                               (DNH/GJD)
COMMISSIONER OF SOCIAL SECURITY,
                                        Defendant.
_____

JERRY PHILLIPS, Plaintiff *Pro Se*
JENNIFER S. ROSA, Special Asst. U.S. Attorney for Defendant

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income benefits on April 21, 2003, alleging disability beginning May 4, 2001. (Administrative Transcript ("T."), 51-54). The application was initially denied on November 26, 2003. (T. 22-26). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on November 22, 2004. (T. 239-61). Plaintiff was the only witness to testify at the hearing. *Id*.

In a decision dated January 25, 2005, the ALJ found that plaintiff was not disabled. (T. 14-21). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on

September 6, 2006. (T. 4-7).

## CONTENTIONS

The plaintiff is *pro se* in this matter and has not filed a brief in support of his claim. On July 13, 2007, this court ordered that defendant file a brief in support of the Commissioner's position. (Dkt. No. 12). The Commissioner's brief was filed on August 10, 2007. (Dkt. No. 13). The defendant argues that the the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed. This court's order of July 13, 2007, gave plaintiff the opportunity to respond to defendant's brief, but plaintiff has not filed any brief.

This court assumes that plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record. This court has examined the entire administrative record in rendering this decision, including arguments made by plaintiff's attorney when plaintiff requested review by the Appeals Council.[1]

## FACTS

Plaintiff was 48 years old when he first applied for Supplemental Security Income ("SSI") benefits during 2003. At the time of the ALJ hearing, plaintiff was 49 years old. Plaintiff has a high school equivalency degree, and has past work experience as a carpenter, construction worker, and laborer. Plaintiff worked as a carpenter for twenty years, building houses and doing heavy work, including roofing, remodeling, and installing sheet rock. (T. 62, 248). According to plaintiff, his roofing work required him to frequently lift more than fifty pounds, and sometimes lift up to

---

[1] Plaintiff was represented by counsel at the ALJ hearing and before the Appeals Council.

one hundred pounds of shingles. (T. 62). Plaintiff had two other jobs, working in an aluminum foundry and in a factory buffing aluminum sheets. (T. 246, 247). Plaintiff alleges that he became disabled on May 4, 2001 due to a combination of impairments. (T. 52, 61).

### A.     Plaintiff's Testimony

At the hearing, plaintiff was represented by counsel. The ALJ asked plaintiff's counsel whether any treating physician had rendered any opinions about plaintiff's capacity for work. (T. 243). Plaintiff's counsel responded that they had not asked for a Residual Functional Capacity assessment from any treating physician, but that one could be requested. (T. 243). As the ALJ points out in his decision (T. 17), no treating physician has given any opinion about plaintiff's ability to perform work related tasks. Although plaintiff's former counsel did submit additional evidence to the ALJ and the Appeals Council (T. 7), that evidence consisted only of office notes and other medical records.

Plaintiff testified that he was driven to the ALJ hearing by his step-father (T. 245), since he had lost his driver's license because of D.W.I. convictions and child support delinquencies. Plaintiff was then living in a house owned by his mother, and was receiving Social Services assistance including food stamps and Medicaid. (T. 245). Since experiencing a heart attack in May 2001, plaintiff has not sought any jobs and stated that he cannot work because of his inability to walk. (T. 249). According to plaintiff, he gets leg cramps, and he has difficulty breathing. (T. 249). Plaintiff stated that his legs "knot up," are painful, and he must stop for a few minutes in order

3

to continue walking. (T. 249). He is able to walk about two hundred feet before he begins to feel pain in his legs. When that occurs, he simply stands still for a minute or two and is then able to continue walking. *Id*. Plaintiff is able to take care of his personal grooming needs, and prepares his own meals. (T. 82, 83).

Plaintiff testified that his girlfriend did the heavy cleaning in his house, and either she or plaintiff's mother would do his laundry and grocery shopping. Plaintiff has no difficulty ambulating for short distances, and leaves his house to place his dog in his yard or visit his mother. (T. 252, 253). Plaintiff stated that he spends his day watching TV or reading. (T. 252).

Plaintiff testified that he takes a number of medications and was not sure which were prescribed for his heart condition. (T. 250). He does have elevated blood pressure and cholesterol levels, and believes that some of his medications are for those conditions. (T. 251). Plaintiff stated that he does not have any side effects from any of his medications, and in the past, his medications have been switched if he did have side effects. (T. 251). According to plaintiff, he does not have any problems sitting or standing, but is unable to work because he cannot walk more than two hundred feet without pain in his legs. (T. 249).

Plaintiff also stated that he does have trouble breathing whenever he is walking or doing anything strenuous. (T. 256). In addition, he carries nitroglycerin to alleviate any chest pain. Plaintiff stated that he had not been having "serious pain" since he had not been doing any activities. (T. 257-58). Plaintiff stated that he takes a special medication for his chronic obstructive pulmonary disease ("COPD"), and just

started using it several days before the hearing. (T. 258). According to plaintiff, he has no difficulty standing, and believes he could stand without pain. (T. 259, 260). Plaintiff stated that he does not have any concentration or memory problems, and has not needed to use nitroglycerin recently. (T. 260).

**B.     Medical Evidence**

On May 6, 2001, plaintiff was admitted to the Nathan Littauer Hospital complaining of chest pain, shortness of breath, and some numbness in his left arm. (T. 142). The discharge summary from this hospital shows that plaintiff was admitted to Nathan Littauer Hospital approximately three years previously, and apparently left the hospital "against medical advice." (T. 142). Plaintiff was transferred to Ellis Hospital in Schenectady, New York, where various tests were administered and a heart catheterization was performed. The discharge summary from Ellis Hospital shows that plaintiff had "non-critical coronary artery disease" (T. 108), and that plaintiff's catheterization showed diffuse non-critical irregularities (T. 109). The discharge summary specifically mentioned that plaintiff had very serious alcohol and tobacco problems, including consumption of " . . . a case of beer a day and . . . two to three packs of cigarettes a day . . . ." (T. 108). The summary also stated that plaintiff " . . . has been basically noncompliant with his medical therapy." (T. 108). The findings of the cardiac catheterization laboratory showed some stenosis in some arteries, but no aortic stenosis, and good overall ventricular systolic function. (T. 111). The recommendation of the physicians at Ellis Hospital was for medical therapy and for plaintiff to quit smoking. (T. 112). Plaintiff was referred to a cardiologist, Dr.

5

Frederick Wiese.

The records show a visit to Dr. Wiese during May 2002 and May 2003. (T. 113-16). Dr. Wiese commented on plaintiff's excessive use of alcohol, his failure to refill his prescriptions, and his noncompliance in taking his medications. (T. 116). Dr. Wiese also stated that plaintiff has angina (chest pain) when he is doing excessive and/or strenuous work, but when not doing that work, plaintiff has no angina, no palpitation, and no syncope. (T. 116). Plaintiff's lungs were clear and his heart had regular rhythm. These were essentially normal findings. (T. 116). Dr. Wiese prescribed medications for plaintiff and specifically noted that plaintiff was using excessive amounts of tobacco and alcohol, and had not been compliant with his medical regimen. *Id.*

Plaintiff's primary care treating physician is Dr. Robert Brandis, and his Physician's Assistant is Kelly Viscosi, both from Nathan Littauer Hospital. (T. 126-39). The record shows that plaintiff visited PA Viscosi and Dr. Brandis on January 22, 2002, and reported that he was continuing to drink "an uncertain amount" of alcohol and had not been taking his medication as prescribed. (T. 138). Plaintiff complained of chest pain, but the examination did not show any unusual medical problems. Plaintiff's diagnosis was coronary artery disease, hypertension, alcohol abuse, chronic obstructive pulmonary disease with ongoing tobacco abuse, and a history of cervical fracture and anxiety disorder. (T. 138, 139).

During July 2002, plaintiff visited the primary care center at Nathan Littauer Hospital complaining of increased shortness of breath with activity. (T. 133, 208-09).

The medical records indicate that plaintiff's diagnoses were hypertension, coronary artery disease, alcohol abuse, tobacco abuse, shortness of breath, and cramping in plaintiff's lower extremities. (T. 133). Several weeks later on August 2, 2002, plaintiff visited Dr. Brandis complaining of intermittent chest pain, nausea, and shortness of breath. The record states that plaintiff stated that he "does a lot of heavy lifting, but he has not done anything different that [sic] what he normally does and he attributes what is going on to just muscular pain." (T. 132). Plaintiff had normal cardiac sounds, clear lungs, no tenderness in plaintiff's chest, and no respiratory distress. Plaintiff's diagnosis was chest pain, alcohol abuse, hypertension, elevated liver function tests, tobacco abuse, anxiety, and COPD. (T. 132). Plaintiff was admitted to the hospital for observation. *Id*.

The next examination report is dated January 9, 2003, when plaintiff reported that he was doing "okay," and needed medication refills. (T. 129, 207). The notes, signed by PA Viscosi and Dr. Brandis show that plaintiff failed to appear for a previous appointment to conduct arterial studies of his lower extremities to rule out claudication. (T. 129). Dr. Brandis continued his previous diagnoses, and encouraged plaintiff to cut back further on smoking and drinking. (T. 129).

Plaintiff did have studies of the arteries in his legs, and on January 17, 2003. The report shows that plaintiff had "moderate arterial obstruction" in his right leg and "mild" obstruction in his left leg. (T. 128). However, repeat arterial studies were within normal limits. (T. 126). Records from Nathan Littauer Hospital show that plaintiff was continuing to smoke and drink excessively. (T. 126). On April 25, 2003,

7

plaintiff was examined by Dr. Brandis, who continued his previous diagnoses, and referred plaintiff to the vascular clinic for further follow-up. (T. 126). The report noted that plaintiff had not been to see Dr. Wiese recently, and plaintiff was advised to consult with his cardiologist at least once every year. (T. 126). The next visit to Dr. Brandis and PA Viscosi was on May 23, 2003, when plaintiff's blood pressure was normal and other examination findings were normal. (T. 204). Plaintiff's hypertension was improved, but the doctor continued his other diagnoses of coronary artery disease, alcohol abuse, tobacco abuse, anxiety disorder, and history of gastritis. (T. 204).

### C.     Consultative Examination

On August 4, 2003, plaintiff was examined consultatively by Dr. Burton Shayevitz. (T. 151-54). Plaintiff reported to Dr. Shayevitz that plaintiff still got discomfort on the left side of his chest with any lifting or reaching with his arms, and that his legs and thighs "knot up" in pain when walking more than one hundred fifty feet. (T. 151). Plaintiff stated that he had reduced his smoking to one pack per day, and reduced his alcohol consumption to weekends. (T. 151).

Dr. Shayevitz conducted a physical examination, and found no neurological deficits, normal musculoskeletal examination, full strength in plaintiff's extremities, but abnormal pulmonary function compatible with moderate obstruction and low vital capacity. (T. 154). Dr. Shayevitz's impression was plaintiff had chronic obstructive bronchopulmonary disease, history of chronic tobacco and alcohol dependence, and coronary artery disease with prior angina. (T. 154). Dr. Shayevitz believed that plaintiff was "above" moderately limited by shortness of breath on effort, and that the

possibility of recurring angina or heart attack would prohibit plaintiff from any heavy or repetitive exertion, "lifting, pulling, pushing, running, jumping, and climbing, etc." (T. 154).

On September 8, 2003, Dr. Alan Auerbach reviewed plaintiff's medical records and concluded that plaintiff's heart condition appeared to be stable. (T. 164). Dr. Auerbach questioned the diagnosis of COPD, and believed that plaintiff's smoking history was the cause of plaintiff's shortness of breath because plaintiff's lungs were clear on examination, plaintiff was not utilizing any bronchodilators, and plaintiff had not visited any emergency rooms or had hospital admissions for pulmonary problems. (T. 164). Dr. Auerbach believed that plaintiff should undergo a treadmill exercise test, and that pulmonary studies should be conducted using a bronchodilator. Dr. Auerbach also believed that additional Doppler studies on plaintiff's arteries should be conducted. *Id.*

Plaintiff had an treadmill exercise test on October 22, 2003, but the examining physician had to discontinue the test because plaintiff was complaining of knee pain. (T. 167). Plaintiff had pulmonary function tests on November 10, 2003, and the examining physician believed that plaintiff had a moderate pulmonary restriction. (T. 185). After reviewing all of the additional test results, Dr. Auerbach found that the pulmonary tests showed only a mild obstruction, and that considering all of the medical evidence in plaintiff's file, plaintiff was capable of light work in an environment free of concentrated dust or fumes. (T. 192).

The medical records show two additional visits to Dr. Brandis, one on

December 9, 2003 when plaintiff reported that he was doing "okay," but complained of leg pains restricting his ability to walk. (T. 203). Plaintiff stated that he could walk only three hundred feet before needing to stop because of cramping. (T. 203). Dr. Brandis believed that plaintiff's vascular tests showed that his circulation was appropriate, and the other findings on examination were normal. (T. 203).

The next visit to Dr. Brandis in the record was almost *two years later* in October 2005.[2] (T. 238). Plaintiff again stated that he was doing "okay," had stopped drinking, and had reduced his smoking to one pack of cigarettes per day. Plaintiff still complained of leg cramps when walking, but had not seen his cardiologist in several years. Dr. Brandis continued his diagnoses of coronary artery disease, chronic obstructive pulmonary disease, alcohol abuse, hypertension, and possibly Buerger's[3] disease due to plaintiff's chronic tobacco and alcohol abuse. (T. 203, 238). On November 30, 2005, plaintiff had an arteriogram and vascular stent placements. (T. 232-33). The report of this procedure indicates that the angiographic results were excellent, with no residual stenosis. (T. 232-33).

On April 20, 2006, plaintiff was examined by PA Viscosi, and plaintiff reported that his walking ability had not improved after the stents had been placed in his upper extremities. (T. 236). PA Viscosi did not find any unusual medical conditions and

---

[2] These records were submitted to the Appeals Council after the November 22, 2004 ALJ hearing. (T. 235)(letter from plaintiff's counsel to the Appeals Council, dated June 14, 2006).

[3] Buerger's is a disease in which there is acute inflammation and clotting of arteries and veins, causing pain induced by insufficient blood flow during exertion. The disease is often associated with tobacco use. http://vasculitis.med.jhu.edu/typesof/buerger.html. (The Johns Hopkins Vasculitis Center website).

stated that plaintiff's laboratory tests from April 16, 2006 were within normal limits. (T. 236). PA Viscosi continued the same diagnoses as Dr. Brandis. (T. 236).

## DISCUSSION

**1.   Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner]

11

> will consider him disabled without considering vocational factors such as age, education, and work experience; ... . Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

**2.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

Because plaintiff is pro se, the court is attempting to determine the arguments that he could be making, since he has not filed any documents in support of his complaint in accordance with the court's General Order 18 and this court's subsequent order affording plaintiff time to file a response to defendant's brief. The court has the duty in any event to review the record *de novo* for substantial evidence even if the

plaintiff were represented. *See Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004)(court reviews the administrative record de novo to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standards).

Even on appeal, the Second Circuit has stated that the court's focus is "not so much on the district court's ruling as it is on the administrative ruling." *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003)(quotation omitted and internal quotation marks omitted). Thus, regardless of plaintiff's failure to file a brief in support of his position, the court will examine the agency decision for substantial evidence.[4]

3.  **ALJ's Decision**

In this case, the ALJ found that plaintiff has coronary artery disease, chronic COPD, hypertension, and claudication. (T. 17). The ALJ also found that plaintiff abuses alcohol and tobacco. (T. 17). The ALJ found that these impairments are "severe," but not severe enough to meet the requirements of a Listed Impairment. *Id*. The ALJ then considered the plaintiff's residual functional capacity (RFC) and determined that plaintiff retained the RFC to occasionally lift, carry, push and pull twenty pounds; frequently lift, carry, push and pull ten pounds; stand or walk for six hours in a work day, with usual breaks, as long as the walking was limited to short distances of 100 feet or so several times per day. (T. 18). The ALJ also found that plaintiff could occasionally balance, climb, crouch, stoop and kneel, but must avoid

---

[4] The court does note that plaintiff was represented before the ALJ and the Appeals Council. His attorneys filed a brief on appeal to the Appeals Council and included the medical evidence obtained after the ALJ hearing. (T. 216-38). This court has also reviewed the arguments submitted by plaintiff's counsel to the Appeals Council.

concentrated exposure to dust, fumes, gases and other respiratory irritants. (T. 18).

The ALJ found that plaintiff could not perform his past heavy work, and considered plaintiff's capacity to perform a wide range of light and sedentary work. (T. 19). The ALJ used the Medical Vocational Guidelines as a "framework," but also considered plaintiff's particular limitations, even assuming that plaintiff's particular limitations would significantly diminish the range of light work. (T. 19). The ALJ found that "even if there were significant erosion of the light work job base, the claimant would be able to perform a full and wide range of sedentary work under the assessed limitations." (T. 19). The ALJ, thus, concluded that plaintiff retained the capacity to perform work that existed in significant numbers in the national economy, and that plaintiff was not disabled for purposes of Social Security. (T. 20-21).

## 4. **Treating Physician**

While a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and ***not inconsistent with other substantial evidence***. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d). If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is ***not*** required to give the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must, however, properly analyze the reasons that the report is rejected. *Id*. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

If the treating physician's opinion is not given controlling weight, the ALJ must

15

assess the following factors: the length of the treatment relationship; the frequency of examination for the condition in question; the medical evidence supporting the opinion; the consistency of the opinion with the record as a whole; the qualifications of the treating physician; and other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(d)(6); 416.927(d)(2)-(d)(6). Failure to follow the proper standard is a ground for reversal. *Barnett v. Apfel*, 13 F. Supp. 2d 312, 316 (N.D.N.Y. 1998)(citation omitted).

In this case, the ALJ accurately summarized the treatment by plaintiff's treating physicians (T. 15, 16), and accurately summarized the examination by Dr. Shayevitz and the opinion by Dr. Alan Auerbach after additional medical testing specifically requested by Dr. Auerbach. The ALJ's opinion about plaintiff's medical condition and his ability to work is supported by substantial evidence in the record. The ALJ's opinion is based on findings of Dr. Burton Shayevitz and the opinion of Dr. Alan Auerbach.

Before the agency, plaintiff's counsel argued that the ALJ improperly took Dr. Auerbach's opinion into account because Dr. Auerbach did not examine plaintiff. (T. 223-25). Plaintiff's counsel also argued that the ALJ improperly analyzed Dr. Shayevitz's report. (T. 223). However, Dr. Shayevitz's and Dr. Auerbach's opinions are consistent with all of the medical evidence in the record, and plaintiff's treating physician and treating cardiologist have not rendered any opinion about plaintiff's inability to perform work.

**5.     Residual Functional Capacity**

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545; 416.945. *See Martona v. Apfel*, 70 F. Supp. 2d 145 (N.D.N.Y. 1999)(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Verginio v. Apfel*, 1998 WL 743706 (N.D.N.Y. Oct. 23, 1998); *LaPorta v. Bowen*, 737 F. Supp. at 183.

The ALJ determined, based upon Dr. Auerbach's opinion and the medical evidence including plaintiff's testimony, that plaintiff was able to perform light and sedentary work with minor restrictions with respect to walking and dust. (T. 19). The ALJ's opinion is supported by substantial evidence in the record since plaintiff specifically stated he has no difficulty standing or sitting, and does not experience shortness of breath unless he is doing something strenuous. The ALJ also specifically considered plaintiff's alleged inability to walk long distances and stated that walking would be limited to distances of 100 feet or so several times per day. (T. 18).

In plaintiff's appeal to the Appeals Council, his attorney argued that the ALJ's own finding that plaintiff could only walk 100 feet at a time would render plaintiff incapable of light work because light work requires an individual to walk for six to eight hours per day. (T. 220). As stated above, the ALJ took plaintiff's limitation into

consideration when he found that although plaintiff could walk for six to eight hours per day, the walking would be limited to 100 feet at a time. The ALJ also found that in the alternative, plaintiff could perform sedentary work. (T. 19). Thus, the ALJ's decision did take plaintiff's limitations into account, and the ALJ's RFC determination is supported by substantial evidence.

**6.      Credibility**

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged...." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.

18

*Id.* § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3).

In the agency, plaintiff's counsel argued that the ALJ improperly found that the plaintiff was only partially credible. (T. 226). The ALJ's findings about plaintiff's credibility are supported by substantial evidence in the record since plaintiff has made several statements to his physicians about strenuous work or doing types of contracting work contrary to his claimed disability. Plaintiff's stated to his physicians that he was engaged in heavy lifting and contracting work. (T. 132, 215). Plaintiff also stated that he was doing "odd contracting work off and on." (T. 215). Plaintiff has been consistently noncompliant with his medication and has given different versions about the amount of alcohol and tobacco that he was using contrary to specific medical advice. The ALJ's determination about plaintiff's credibility is fully supported by the evidence in the records, consisting of plaintiff's statements to his

19

physicians and plaintiff's testimony.

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED** and the Complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 28, 2009

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge